# In the United States Court of Federal Claims

No. 09-153, 10-541C, & 11-486C (consolidated)

(Filed: August 28, 2014)

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| AMERICAN GOVERNMENT PROPERTIES and HOUMA SSA, LLC, | |
| *Plaintiffs*, | Contracts; Contracts Act, 41 U.S.C. § 6305, Prohibition of assignment of contracts with the federal government. |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| *Defendant*. | |

* * * * * * * * * * * * * * * * * * * *

*Clinton Meyering*, Taylor, MI, for plaintiffs.

*Jeffrey D. Klingman*, United States Department of Justice, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Krschman, Jr.*, Director, and *Stuart F. Delery*, Assistant Attorney General, Washington, DC, for defendant.

OPINION

This case concerns a contract to design, build, and then lease to the Social Security Administration ("SSA") an office building in Houma, Louisiana. The General Services Administration ("GSA") terminated the contract for default, citing lack of progress in construction. This case was filed along with three others also involving contracts to design, build, and lease office buildings in Louisiana to the SSA.[1] Plaintiffs in each case were terminated for default and

---

[1] Those cases are *American Government Properties & New Iberia SSA, LLC*, No. 09-131C, *Lake Charles XXV, LLC v. United States*, No. 09-363C, and *Terrytown SSA, LLC v. United States*, No. 09-364C. Those cases are not consolidated with this one because they involve separate contracts. The docket

(continued...)

now allege that the termination was improper and seek damages as a result of defendant's alleged breach of the contract. Defendant has moved to dismiss two of the cases, including this one, on the grounds of an improper assignment. In this case, the allegation is that the contract was assigned to Houma SSA, LLC ("Houma") by American Government Properties ("AGP"), the original contracting party, in violation of the Contracts Act's prohibition against assignments,[2] or, in the alternative, that one or both of the two plaintiffs lack standing.[3] Because we agree that the assignment from AGP to Houma violated the Contracts Act, we grant the motion to dismiss.

BACKGROUND

The General Services Administration ("GSA") awarded Lease No. GS-07B-15580 to AGP on June 16, 2005. The contract called for AGP to design and build a 12,206 rentable square feet office facility in Houma, Louisiana and then lease it to SSA.

On July 27, 2005, AGP executed a document entitled "Assignment of U.S. Government Real Property Lease" with Huoma, a newly formed Louisiana limited liability company. AGP was the sole member of Houma. The assignment document stated that the assignor, AGP, "assign[ed] all of its contractual rights and interests under the Lease." Def.'s App 223. The assignee, Houma, agreed "to perform all of the obligations of Lessor under the Lease." *Id.* Houma, as assignee, also agreed to "take all steps necessary to ensure that this Assignment is reflected in the records of the United States Government." *Id.*

GSA provided final design drawings in late June 2006. *See* Def.'s App. 248-49 (emails between GSA, SSA and plaintiffs' subcontractor regarding the design drawings). GSA issued the notice to proceed on March 1, 2007.

---

[1](...continued)
numbers consolidated with the present case, as will be explained later, represent later claims made to the contracting officer regarding this contract.

[2]*See* 41 U.S.C. § 6305 (2012).

[3] Defendant also moved for summary judgment on the alternate ground that its termination for default was proper. We need not reach that motion because we grant the government's motion to dismiss.

By September 2007, the parties were discussing possibilities for plaintiffs and their general contractor, Carotex Construction, Inc., to extricate themselves from the lease and several other related projects on which Carotex was the general contractor. Victor Blackmon, a principal of plaintiffs and Carotex, inquired about selling and assigning the leases or mutually terminating them. *See* Def.'s App. 251-52 (email chain between Blackmon and GSA). On September 20, 2007, however, Mr. Blackmon proposed a construction schedule culminating in delivery of the facility to SSA for move-in on February 18, 2008. The parties proceeded down that path with AGP/Houma/Carotex building the facility.

In October 2007, the contracting officer at that time, Nancy Lopez, and Mr. Blackmon discussed by email the assignment from AGP to Houma. Ms. Lopez inquired whether Houma/AGP had sent to GSA the necessary paperwork documenting the assignment. If not, she asked for a copy of the assignment agreement between AGP and Houma. Mr. Blackmon replied that he would look through company files and send a copy of a Supplemental Lease Agreement ("SLA") in which, he said, GSA agreed to substitute Houma for AGP. *See* Def.'s App. 259-60. Neither party has produced a copy of such an SLA nor is there any evidence, other than this email exchange, that one was executed.

GSA and plaintiffs did, however, execute a SLA regarding a different matter on November 8, 2007, in which the parties agreed that GSA would conduct a site visit and inspection of the concrete slab on November 12, and that plaintiff would deliver the Houma facility on February 18, 2008. Def.'s App. 261 (SLA No. 1). Less than a week later, GSA sent a cure notice to Carotex, stating that the inspection revealed that no construction progress had been made since the last site visit on August 10, 2007. Def.'s App. 274 (November 16, 2007 cure notice). The notice warned that GSA was considering terminating the contract for default and instructed Mr. Blackmon that he had ten days "to present, in writing, any facts bearing on the question" of whether the "failure to perform arose from causes beyond your control and without fault or negligence on your part." Def.'s App. 275.

Mr. Blackmon responded to the cure notice in a November 26, 2007 email to Ms. Lopez, stating that Houma had experienced 34 days of rain delay since September 1, 2007, and that all the necessary building permits were not received until October 8, 2007. Def.'s App. 278. He asked for credit for 23 days of rain delay and a concomitant extension. Further, he promised to provide a new schedule and supporting information by November 30, 2007.

He also promised to provide more information regarding the chronology of the project and the impact of the various events on the project's time line within two weeks of his email. *Id.* at 279.

Plaintiffs and Carotex continued to work through problems with subcontractors and the various building permits. An internal Cerotex email from project manager Jesse LeBlanc indicated that Houma had these issues largely worked out by December 21, 2007, and that the "only loose end" remaining was an electrical contractor. Def.'s App. 280. GSA conducted site visits in December 2007 and January 2008.

On February 21, 2008, GSA sent another letter to AGP, detailing the various deadlines not met, problems with the concrete slab, and failure to respond to the previous notice with the promised information. GSA once again warned of a likely termination for default and instructed AGP to provide information within 10 days regarding whether it was at fault.

Plaintiffs responded on March 4, 2008, through a Carotex employee, John Kimbrough, writing on Houma letterhead. In that letter, AGP/Houma reported that plaintiffs had hired a structural engineer to report on the concrete slab and that another nine yards remained to be poured. The next day, Mr. Kimbrough sent a revised schedule extending the completion date to June 18, 2008.

The contracting officer responded by letter dated March 12, 2008, terminating the contract for default pursuant to GSA Regulation ("GSAR") 552.270-18, which was incorporated into the contract by reference, citing, among other things, failure to complete the project by the February 21, 2008 date agreed to in SLA No. 1 and failure to submit information regarding the delays and problems noted in the November 2007 cure notice. The agency then sought bids for a replacement contractor to design, build, and lease a facility in Houma, Louisiana.

AGP submitted a certified claim to the contracting officer, dated March 25, 2010, seeking $4,217,607.20 in damages as a result of wrongful termination. AGP claimed that delays in completion were due to unusually severe rain for "no less than 87 days," which it claimed excused the delay in construction. Def.'s App. 305. AGP also claimed it experienced delay due to GSA's failure to timely provide design drawings and a notice to proceed, GSA's failure to cooperate and communicate after Hurricanes Katrina and Rita, and GSA's improper halting of the concrete slab pour. AGP did not, however, quantify those alleged delays. *See*

*id.* at 301-08.

The contracting officer issued her final decision denying AGP's claim on June 10, 2010. She rejected the weather delay claim based on lack of evidence and failure to provide notice of such delay prior to contract termination, and concluded that the termination for default was proper. The rest of plaintiffs' claims were denied on the basis that the termination was proper. *See* Def.'s App. 649-54.

In early May 2010, the contracting officer issued another final decision assessing $2,463,170.80 in reprocurement costs and liquidated damages totaling $365,000 for the delay between the original contract completion date, February 18, 2008, and the estimated January 11, 2012 replacement lease delivery date ($250.00 dollars per day). On June 22, 2010, GSA issued a replacement contract for the design, construction, and lease of similar, slightly larger facility.

Plaintiffs brought their complaint here on March 11, 2009, prior to submitting a certified claim to the contracting officer. Plaintiffs subsequently voluntarily dismissed the damages element of that complaint. The case remained pending while they submitted a certified claim and the contracting officer issued her decisions. Plaintiffs then reasserted their request for damages in a new complaint filed on August 11, 2010, under docket number 10-541. Plaintiffs separately appealed the agency's assessment of reprocurement costs and liquidated damages in a complaint filed on July 26, 2011, under docket number 11-486. Both of those cases have been consolidated under this case, and all of those issues are pending before the court. After extensive discovery, defendant has moved to dismiss, or in the alternative, for summary judgment that the termination was proper. Plaintiffs responded, opposing the motion to dismiss, and moved for partial summary judgment that the termination was improper.

## DISCUSSION

The basis of defendant's motion to dismiss is that the assignment of the contract from AGP to Houma was a violation of the Contracts Act's prohibition against contract assignments, thereby voiding the contract. Without a valid contract with the United States, plaintiffs do not have standing to maintain a claim against the United States. In the alternative, if the court decides that either plaintiff survives the motion to dismiss, then the other company should be dismissed because it was not in privity with the

government. Because we agree with defendant that the assignment executed between AGP and Houma violated the Contracts Act, we need not reach the parties' other arguments regarding whether the termination for default was proper.

Plaintiffs bear the burden of proving jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The factual allegations in the complaint are generally treated as true, but they may be challenged. *See Shoshone Indian Tribe of the Wind River Reservation v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). When considering a question of jurisdiction, the court may consider extrinsic evidence. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). Our jurisdictional statutes, as waivers of sovereign immunity, must be construed strictly, and any conditions placed upon the court's jurisdiction must be met in order to hear a claim. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008) (holding that this court's statute of limitations had to be construed strictly as a condition placed upon this court's jurisdiction).

The Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109 (2012), grants this court jurisdiction to review final decisions of contracting officers. *Id.* § 7104(b). When the CDA is implicated, this court has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . ." 28 U.S.C. § 1491(a)(2). The requirements of the CDA and other contracting statutes "operate as limits upon this waiver of sovereign immunity." *Inter-Coastal Xpress, Inc. v. United States*, 296 1357, 1365 (Fed. Cir. 2002). In the context of a CDA claim, the implication of strictly construing our jurisdiction is that, if plaintiffs fail to meet a requirement of the act or otherwise violate a requisite to triggering access to the court through a contracting statute, jurisdiction does not attach.

41 U.S.C. § 6305, known as the "Contracts Act," prohibits the transfer of federal contracts, or any interest in such a contract, to another party. "A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contact are reserved to the [government]." *Id.* § 6305(b).[4] This

---

[4] This section was recodified on January 4, 2011 to appear as it does today at 41 U.S.C. § 6305. Previously it was codified at 41 U.S.C. § 15(a) in
(continued...)

"protect[s] the Government from secret assignment arrangements, to prevent possible multiple claims, and to make unnecessary the investigation of alleged assignments." *Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1349 (Fed. Cir. 2002). Thus the government knows with whom it is dealing, *see Hobbs v. McLean*, 117 U.S. 567, 576 (1886), and is protected against the potential of duplicate claims, *NGC Inv. & Dev., Inc. v. United States*, 33 Fed. Cl. 459, 463 (1995).

Under the act, contracts may be assigned only to a financing institution, such as a bank or trust company, for the entire balance due, to only one party, and the assignee must file a written notice of the assignment, along with a copy of the instrument of assignment with the CO, the surety provider, and the disbursing officer designated in the contract to make payment. 41 U.S.C. § 6305(b). These requirements may be abrogated by contractual agreement between the government and the original contractor. If these conditions are not met, the assignment violates the Contracts Act, and any claim against the contract is annulled at the government's option. *Id.*

In addition to the statutorily allowed assignments, there are two judicially recognized exceptions to these requirements. The first is if the agency waives the statutory prohibition by giving "clear assent to the assignment." *D&H Distrib. Co. v. United States*, 102 F.3d 542, 546 (Fed. Cir. 1996). This court's predecessor explained that the government can waive the assignment prohibition through a novation agreement executed by all three involved parties, which the court described as the "soundest and most accepted method of establishing recognition" of the assignment by the government, or it can waive the prohibition by acting consistently with the assignment through its course of conduct. *Tuftco Corp. v. United States*, 614 F.2d 740, 745 (Ct. Cl. 1980). The question is thus whether the agency's actions "indicated its consent to and recognition of the assignments." *Id.* The burden is on the plaintiffs to show a "meeting of the minds" that the government acquiesced to the change. *Kawa v. United States*, 86 Fed. Cl. 575, 91 (2009).

The second exception to the prohibition against assignment is one by operation of law. This exception has been recognized since the Supreme Court's 1878 decision in *Erwin v. United States*, in which the Court

---

[4](...continued)
substantially the same form. For ease of reference, we cite to its current location.

maintained that an assignee in bankruptcy could sue the government on a contract claim despite the statute's prohibition. *Erwin v. United States*, 97 U.S. 392 (1878). Since then, courts have further applied the operation of law exception in cases of corporate succession through merger or consolidation, *see, e.g.*, *Seaboard v. Air Line Ry. v. United States*, 256 U.S. 655 (1921), and certain instances of corporate reorganization, *see, e.g.*, *Johnson Controls World Servs., Inc. v. United States*, 44 Fed. Cl. 334 (1999) (allowing a wholly owned subsidiary to maintain a claim after it was assigned a contract entered into by the parent company).

Defendant argues that plaintiffs violated the act when AGP entered the lease assignment agreement with Houma because Houma is not a financing company, as required by the act, nor did plaintiffs properly notice the agency by notifying the disbursing officer. Defendant further argues that the government did not waive its rights in this regard because GSA took no actions that would show an intentional abandonment of its rights. Defendant points to the fact that no novation was entered into by the parties, *i.e.*, no supplemental lease agreement naming Houma as the party to receive payment, and GSA never submitted payment to Houma nor took any other action manifesting a clear intent to recognize and accept AGP's transfer to Houma. The government's final point is that the transfer from AGP to Houma could not have been "by operation of law" because Houma is an entirely separate corporate entity from AGP, Houma did not succeed AGP in interest through corporate reorganization or acquisition, and the transfer of interest did not happen by other lawful means such as bankruptcy.

Plaintiffs do not claim to meet the statutory requirements for assignment, but argue that, because the same individuals were in control of both entities (AGP and Houma), the purpose of the act was not violated and the "operation of law" exception should apply. Plaintiffs cite a decision of the General Services Board of Contract Appeals in which the board allowed a claim to survive despite plaintiff having assigned the contract to a partnership that she created with her two sons. *See Adelaide Blomfield Mgmt. Co.*, GSBCA No. 13125, 95-2 BCA ¶ 27,865 (1995). The board held that the contract need not be annulled because GSA knew with whom it was dealing and to whom payment was owed. *Id.* Here, plaintiffs argue that the transfer to Houma was akin to a corporate reorganization. Plaintiffs allege that Houma was a wholly owned subsidiary of AGP, formed specifically to administer this contract, which plaintiffs aver was the normal practice of AGP. AGP was the only member of Houma as a Limited Liability Company, and thus, in plaintiff's view, the aims of the statute are not met by annulling this contract

because the same individuals were in control of both entities and thus also responsible to the government. We disagree.

I. The Transfer to Houma Was Not a Corporate Reorganization

There is a distinction between a voluntary transfer of contract rights, like that between AGP and Houma, and one in which the transfer is forced by law, like corporate succession through purchase or merger, or by other operation of law, such as bankruptcy. The courts have long recognized this distinction in carving out the limited exception to the prohibition against contract assignment. *See, e.g.*, *United States v. Dow*, 357 U.S. 17, 20 (1958) (holding a taking claim to be barred by The Assignment of Claims Act because the former land owner's assignment of the claim was a voluntary transfer and not an operation of law).[5] As this court previously explained, the operation of law exception "generally involves situations where, for all intents and purposes, the contract with the Government continues with essentially the same entity, which has undergone a change in its corporate form or ownership." *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 84 Fed. Cl. 768, 777 (2008) (citing *Westinghouse Elec. Co. v. United States*, 56 Fed. Cl. 564, 569 (2003)).

In *Johnson Controls*, we concluded that a corporate reorganization whereby the parent corporation shifted an entire division responsible for performance of the subject contract to a wholly owned subsidiary did not run afoul of the Contracts Act. 44 Fed. Cl. at 344. This transfer was not problematic because the Air Force was never faced with more than one contracting party and was "always cognizant of the contracting party" before and after the reorganization. *Id.* The new subsidiary also maintained the same management and financial resources dedicated to the contract before and after the change. *Id.* Recognizing the exception to the prohibition in that instance did not "impinge upon the purposes of the Act." *Id.*

---

[5] The Assignment of Claims Act ("Claims Act"), 31 U.S.C. § 3727 (2012), prohibits the assignment of claims against the government before the claim has been allowed. *Dominion Res., Inc. v. United States*, 641 F.3d 1359, 1362 (Fed. Cir. 2011). The Claims Act and Contracts Act serve very similar purposes and the courts have recognized that these statutes act in concert to protect the government, and as such, the operation of law exception is treated similarly under both statutes. *See id.* at 1363 (citing *Tufcto*, 614 F.2d at 744 n.4).

Here, Houma was not a successor in interest to AGP in the sense used in *Johnson Controls*. Houma did not succeed in interest through bankruptcy, merger, or acquisition. It was a voluntary transaction, a transfer of interest from one continuing corporate entity to another newly formed one. Although AGP was the sole member of Houma, a limited liability company, plaintiff has neither alleged nor presented evidence suggesting that Houma maintained the same management, outside of the commonality of Mr. Blackmon and several other owners common to both companies, or the same financial wherewithal to perform the contract. The government lost the assurance that the resources of AGP would be available to complete the project or available should the government be forced to seek a remedy for breach.

The Contracts Act ensures that an agency will know with whom it is dealing during contract performance, whom it should pay, and whom it has recourse against should the contractor fail to perform. The purposes of the act's prohibition of assignments are well met in this case. The parties corresponded regarding a transfer to Houma. Mr. Blackmon told GSA that the lease was under the wrong name, AGP rather than Houma. The contracting officer, Ms. Lopez, responded by asking for supporting documentation and more specifically also asked whether a supplemental lease agreement had been executed to substitute Houma for AGP. The record is silent after this point as to the existence of such a document, and after several years of discovery, plaintiff is unable to produce one.[6] Thereafter, plaintiffs occasionally communicated to GSA through Houma, but the agency responded to AGP. The fact that the government is now sued by both entities is the best proof that the attempted assignment was problematic.

Plaintiffs attempt to assuage these concerns by pointing to the ex post dissolution of Houma and the necessary transfer by operation of Louisiana law of its assets back to AGP. Thus, in plaintiffs' view, the assignment to Houma was a practical nullity. Because no novation agreement was ever entered into by the parties, GSA dealt with AGP all along, and the Contracts Act should not be implicated, according to plaintiffs' counsel.

We cannot, at plaintiffs' invitation, simply ignore assignment of the

---

[6] Plaintiffs admit several times in their briefing that no novation agreement was reached between the parties. *Eg.,* Pls.' Reply to Def.'s Mot. To Dismiss 2.

lease agreement between AGP and Houma, however.[7] There was a period of time when, under state law, the rights and duties of AGP under the contract with GSA were transferred to Houma. The government, however, not having acceded to the transfer of interest, continued to correspond and administer the contract with AGP. The Contracts Act prohibits exactly this sort of contractual imprecision. This is why the courts have long recognized that a novation is the proper way to avoid the prohibition against assignment. *See Tuftco*, 614 F.2d at 745.

Plaintiffs violated the act by transferring the lease from AGP to Houma. Although this trouble would almost certainly have been avoided had plaintiffs simply sent the necessary paperwork to GSA and executed a supplemental agreement to substitute Houma in place of AGP, the Contracts Act must be strictly construed as a condition on the waiver of sovereign immunity. Not having undertaken those necessary steps, the conclusion that plaintiffs' contract was annulled is inescapable. Defendant's motion to dismiss must be granted.

## CONCLUSION

Because the Contracts Act annulled plaintiffs' contract with GSA, they lack standing to maintain a suit against the government. Accordingly, defendant's motion to dismiss for lack of jurisdiction is granted, and defendant's and plaintiff's cross-motions for summary judgment are denied as moot. The clerk is directed to enter judgment accordingly.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

---

[7] We also do not regard, and plaintiff has not argued, that the contracting officer's request for supporting documentation and inquiry as to whether a SLA had been executed constituted a waiver by course of conduct. Mr. Blackmon informed GSA that the lease should be in the name of Houma, and GSA responded only with questions. *See* Def.'s App. 259-60. We cannot construe that as an intentional waiver of rights.